UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| HAZEL CONNER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-03-49 |
| | § | |
| CELANESE LTD and | § | |
| CELANESE INTERNATIONAL | § | |
| CORPORATION | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #54).  The Court, having considered the motion, Plaintiff's response, and the applicable law, is of the opinion that the motion for summary judgment should be GRANTED.

### Factual and Procedural Background

On May 5, 2003, Plaintiff Hazel Conner filed this lawsuit against her former employer, Defendant Celanese, Ltd., claiming employment discrimination based upon her age and disabilities, retaliation, and intentional infliction of emotional distress.  Plaintiff claims that Defendant failed to promote her to the position of Environmental Specialist because of her age and instead gave that position to a less qualified and younger coworker.  Plaintiff also claims that she was denied fair access to overtime work because Defendant failed to accommodate her disabilities, which prevented her from performing as a full-responder on the company fire-crew.

On or about April 19, 2002, Plaintiff filed an employment discrimination claim with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Americans with Disabilities Act of 1990 ("ADA") and the Age Discrimination in Employment Act of 1967

("ADEA") based on the events described above.  Plaintiff claims that, after filing her EEOC complaint, she was subjected to retaliatory harassment and threats by Defendant, which ultimately forced her to retire. Plaintiff claims that Defendant's actions have caused her pecuniary damage as well as emotional distress.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).  "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in

that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Analysis

In its motion, Defendant argues that there are no issues of material fact as to each of Plaintiff's claims. The Court addresses the merits of each of Plaintiff's claims, as outlined below.

**I.     ADA and TCHRA Claim**

In her complaint, Plaintiff claims that Defendant failed to make reasonable accommodations for her disabilities in violation of the ADA and TCHRA. Defendant required all lab employees, such as Plaintiff, to participate in the plant's Emergency Response Team ("ERT"). Plaintiff advised her supervisor that she could not perform the full duties of a general responder on the ERT due to her disabilities of claustrophobia, fear of heights, bronchitis, and allergies. As a result, Defendant did not require Plaintiff to participate in the ERT. Plaintiff claims that Defendant's failure to make accommodations that would have allowed her to participate on the ERT denied her opportunities to work overtime.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. § 12112(a).[1] The term "discriminate"

---

[1] A TCHRA claim in this context is analyzed under the same framework as an ADA claim. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 286 (5th Cir. 2004).

includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).  To qualify as an individual with a disability under the ADA, Plaintiff must show that she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." 42 U.S.C. § 12112(2). EEOC Regulations interpreting the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working." 29 C.F.R. § 1630.2(i).

Plaintiff claims that her fear of heights substantially limits her major life activity of climbing and hiking; that her claustrophobia substantially limits her ability to enter and/or stay in confined places; and that her bronchitis and allergies substantially limit her major life activity of breathing. The Fifth Circuit has explained that activities that are not "basic, necessary function[s]" are not major life activities under the ADA. *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996). Climbing, hiking, and staying in confined places are simply not "activities that are of central importance to daily life," *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002); *Waldrip v. General Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003).  As such, the Court finds that climbing, hiking and one's ability to enter and/or stay in a confined place are not major life activities as that term is used in the ADA.

Whether Plaintiff's bronchitis and allergies substantially limit the major life activity of breathing depends upon the effect these conditions have on Plaintiff's life.  Chronic bronchitis that results in serious limitation on a person's ability to function normally may very well qualify as a disability under the ADA. *See Hall v. Janet Wattles Center*, 1995 WL 254411, *1 (N.D. Ill. 1995). On the other hand, conditions with infrequent symptoms and little effect on a person's ability to live

a normal life do not qualify as disabilities under the ADA. *See Lockridge v. City of Winston-Salem*, 2005 WL 2136922, *6 (N.D.N.C. Aug. 5, 2005) (slip copy). However, even if Plaintiff's bronchitis and allergies rise to the level of disabilities, the Court finds that Defendant made a reasonable accommodation by excusing Plaintiff from the duties as a full responder on the ERT. Plaintiff was allowed to continue to perform the full duties of a lab analyst and managed to earn an above average number of overtime hours during the period in question.[2] Plaintiff suggests that Defendant waited too long to make this accommodation. The Court notes, however, that Plaintiff waited nearly 16 months from the time Defendant advised Plaintiff that she could not work overtime if she could not perform duties on the ERT to inform her supervisor that she could not perform those duties due to a medical condition.[3] Defendant cannot be penalized for failing to accommodate a disability of which it was not aware. Furthermore, Plaintiff has failed to present any evidence that her ability to perform her job as a lab analyst or earn overtime hours were in any way adversely effected by her nonparticipation on the ERT. Accordingly, the Court finds that summary judgment is appropriate for Plaintiff's claims of discrimination under the ADA and TCHRA.

**II.    ADEA Claim**

Plaintiff claims that Defendant failed to promote her to the position of Environmental Specialist because of her age in violation of the ADEA. The Court analyzes a motion for summary judgment for a failure to promote claim under the ADEA with a three-step, burden-shifting framework. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001).[4] First, the

---

[2] Defendant's Motion for Summary Judgment, Exhibit C1.

[3] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, p.4.

[4] The Court notes that both parties have argued this case as a traditional *McDonnell-Douglas* burden-shifting case, not as a mixed-motive case as recognized by the Fifth Circuit. *See Rachid v. Jack-in-the-Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

Plaintiff must raise a genuine issue of material fact as to each element of her prima facie case. *Id.* Then, the Defendant must articulate a legitimate, non-discriminatory reason for its employment decision. Finally, Plaintiff must raise a genuine issue of material fact as to whether the Defendant's proffered reason was merely a pretext for age discrimination. *Id.*

To establish her prima facie case, Plaintiff must show that (1) she belongs to the protected class, (2) she applied to and was qualified for a position for which applicants were being sought, (3) she was rejected, and (4) a younger applicant was hired for the position. *Medina*, 238 F.3d at 680–81.[5] Defendant does not dispute that Plaintiff has established her prima facie case. However, Defendant offers two legitimate, non-discriminatory reasons for not placing Plaintiff in the Environmental Specialist position. First, Defendant contends that it assigned Kathy Wilson to the newly created position of Environmental Specialist to preserve her job. Kathy Wilson, at the time of the reorganization, had been employed by Defendant for 21 years and was properly qualified for the position of Environmental Specialist. Her prior position was eliminated during the reorganization and Defendant contends, and Plaintiff does not dispute, that her employment would have been terminated if she had not been moved to the Environmental Specialist position. Second, Defendant argues that Plaintiff was not and would not have been considered for the Environmental Specialist position because her expertise and experience were needed in the lab.

Because Defendant articulated legitimate, non-discriminatory reasons for its decision, the presumption of discrimination created by Plaintiff's prima facie case drops from the case, leaving her with the ultimate burden of proving intentional discrimination. As the Fifth Circuit has

---

[5] Part four of the *Medina* analysis actually states "another applicant not belonging to the protected class was hired." *Id.* at 681. However, the Supreme Court has stated that the ADEA prohibits age discrimination even among persons within the protected group. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). Therefore, Plaintiff need only show that the person hired to fill the position was younger than she.

observed, an ADEA plaintiff may satisfy this burden in the summary judgment stage by producing evidence sufficient to create a fact issue as to whether the employer's non-discriminatory reasons are merely pretext for discrimination. *See Medina*, 238 F.3d at 680. The Court concludes that Plaintiff has failed to meet this burden.

In response to Defendant's non-discriminatory reasons, Plaintiff advances several arguments. The Court notes, however, that only one of Plaintiff's arguments directly addresses Defendant's explanations. In particular, Plaintiff seeks to attack Defendant's explanation that it did not and, indeed, would not have considered Plaintiff for the position because her expertise and experience were needed in the lab. Plaintiff counters that Defendant's offer of a retirement package to Plaintiff in May 2001 calls into question the credibility of this assertion by Defendant. Although this initially appears to undermine Defendant's position, the undisputed facts indicate that Plaintiff was offered the retirement package upon commencement of the restructuring in May 2001, while Wilson did not receive the new position until April 2002. During that period, Defendant explained that the number of lab analysts had been significantly reduced.[6] Thus, while Plaintiff's experience and expertise might not have been as important in May 2001, the "significant" reduction of analysts between that time and April 2002 supports Defendant's contention that Plaintiff was needed as an analyst at the time Wilson was given the Environmental Specialist position.

As to Defendant's other explanation that it sought to preserve Kathy Wilson's job, Plaintiff apparently seeks to call into question the credibility of this assertion by comparing her qualifications with those of Wilson. Yet where a Plaintiff relies only on comparative qualifications to suggest pretext as to a proffered non-discriminatory reason, she "must present evidence that she is clearly better qualified than" the individual who was hired. *Sanders v. Anadarko Petroleum Corp.*, 108 Fed.

---

[6] Defendant's Motion for Summary Judgment, Exhibit D.

Appx. 139, 143 (5th Cir. 2004). Indeed, the Fifth Circuit has declared that "unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *Deines v. Texas Dept of Prot. & Reg. Services*, 164 F.3d 277, 280 (5th Cir. 1999) (*quoting Scott v. University of Mississippi*, 148 F.3d 493, 508 (5th Cir.1998)). In support of her qualifications, Plaintiff offers the testimony of Joe Rowland,[7] who stated clearly that his opinion was that Plaintiff "was more qualified for the position than Kathy Wilson." Yet Defendant does not dispute that Plaintiff might have been more qualified than Wilson, only that she was not *clearly* more qualified so as to satisfy the "jump-off-the-page" test. The Court agrees.

It is undisputed that Kathy Wilson had skills relevant to the Environmental Specialist position before her training for the position even began from her previous position that involved reading and applying various regulations. Moreover, at the time Wilson was given the position, Carolyn Griffith[8] stated in her affidavit that Wilson was more thoroughly trained for the Environmental Specialist position. Although Plaintiff makes much of the training she received from Griffith, the Court notes that Griffith also testified that Plaintiff was merely one of four lab employees who were trained in 2000 and 2001 to perform some of the duties of an Environmental

---

[7] Although a former employee of Defendant, Rowland was the previous Training Coordinator for Defendant.

[8] Carolyn Griffith was employed by Defendant for 23 years. Prior to the reorganization of the Bay City plant, Griffith was employed as an Environmental Chemist. Griffith accepted a retirement package during the reorganization and her position was eliminated. Defendant created the position of Environmental Specialist to assume some of the duties of Griffith's eliminated position. Griffith testified in an affidavit dated July 29, 2005 that she trained Plaintiff along with three other lab employees in some of the skills relevant to her position so that they could assume her duties if she was out of the lab. Griffith further testified that this training was in no way intended to prepare Plaintiff or the other employees for the position of Environmental Specialist. Griffith also testified that she provided more extensive and detailed training to Kathy Wilson.

Chemist in the event Griffith was absent. It is undisputed, however, that the position of Environmental Chemist was ultimately eliminated, and that the training that Plaintiff received "was not intended to, nor did it, qualify [Plaintiff] to become an Environmental Chemist or Environmental Specialist."[9] Thus, regardless of which woman in fact had superior qualifications, Plaintiff cannot demonstrate based on this evidence that her qualifications were so clearly superior as to raise an inference of pretext.

Although Plaintiff contends in her response that she in fact was "clearly more qualified" than Wilson, Plaintiff also contends that it is not necessary for her to satisfy this standard in order to survive summary judgment. Instead, Plaintiff asserts that this standard applies only if a plaintiff is attempting to prove pretext *only* on the basis of comparative qualifications. According to Plaintiff, she may also prove pretext by presenting evidence that Defendant's proffered explanations are false or unworthy of belief. While it agrees with Plaintiff that pretext may be established with other evidence attacking Defendant's legitimate, non-discriminatory reasons, the Court notes that no such evidence exists in this case. Despite Plaintiff's claim that her supervisor made discriminatory remarks about her age, it is well established law that such "stray remarks" must be made in a context where they can be attributed to the employment decision at issue. *See Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir.1999). In this case, the alleged remarks were not related, by temporal proximity or otherwise, to the decision to assign Wilson to the new position. Furthermore, although the fact that Kathy Wilson is also part of the protected class does not undermine Plaintiff's prima facie case, it is evidence that Defendant's proffered non-discriminatory reasons were not pretextual. In short, there is nothing in the record to indicate that age played any

---

[9] Dkt. #64, Ex. 1.

role in Defendant offering the newly created position to Wilson instead of Plaintiff.[10]  As such, summary judgment on this issue is appropriate.

## III.    Title VII Retaliation Claim

In order to prove a retaliation claim under Title VII, the Plaintiff must establish: "(1) the employee has engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999).  Defendant does not dispute that Plaintiff engaged in protected activity when she filed an EEOC complaint in 2002.  However, the parties disagree about whether or not Plaintiff suffered an adverse employment action.  The Fifth Circuit has interpreted the "adverse employment action" element in a stricter sense than other circuits. *Id.* at 878.  In the Fifth Circuit, only an "ultimate employment decision" by an employer can form the basis for liability for retaliation under Title VII. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997).  In her complaint, Plaintiff contends that Defendant "allowed her to be subject to selective treatment with threats of termination and harassment in retaliation for her filing an EEOC charge and bringing this lawsuit."[11]  However, even if the Court accepts Plaintiff's characterization of these actions, none amount to an "ultimate employment decision" as required by the Fifth Circuit.  Specifically, the Fifth Circuit has held that activities that do *not* constitute an "ultimate employment decision" include reprimands, *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 657-58 (5th Cir. 2002), rude treatment, *Cardiothoracic Surgery Assocs. of N. Tex.*, 139 F.3d 532, 540 (5th Cir. 1997), criticism of work and

---

[10] Because of the absence of evidence that the age-related animus played a part in Defendant's decision to assign Wilson the position, the Court notes that summary judgment would also be proper under the mixed-motive standard set forth in *Rachid v. Jack-in-the-Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

[11] Plaintiff's Second Amended Complaint at ¶¶ 30, 42.

conduct, *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997), threats of potential dismissal, verbal reprimands, or low evaluations, *Mattern*, 104 F.3d at 708 (5th Cir. 1997).[12] Therefore, Plaintiff fails to establish that she suffered any recognized adverse employment action and, consequently, the Court finds that summary judgment is appropriate as to Plaintiff's retaliation claim.

## IV.     Intentional Infliction of Emotional Distress Claim

Finally, Plaintiff claims that Defendant has intentionally engaged in extreme and outrageous conduct that has subjected her to emotional distress. Specifically, Plaintiff claims that Defendant allowed an employee, Sylvia Martinez, to harass Plaintiff to the point that she missed work and required anti-anxiety medication. The Court agrees that Sylvia Martinez's actions, if Plaintiff's allegations are true, are shameful, and that, if Defendant knowingly allowed such behavior to go on at its plant, it did a true disservice to all of its employees. However, even if the Court accepts Plaintiff's characterization of Sylvia Martinez's actions and Defendant's inaction, Plaintiff cannot make out a claim of intentional infliction of emotional distress under Texas law.

Under Texas law, intentional infliction of emotional distress has four elements: "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir. 1996). To satisfy the second element of this analysis, Plaintiff must establish that Defendant's

---

[12] Plaintiff contends in her response that the Supreme Court effectively overruled some of the above-discussed Fifth Circuit precedent in *Robinson v. Shell Oil*, 519 U.S. 337 (1997). The Court disagrees. Robinson's claim was based on a retaliatory negative reference provided by a former employer that may have caused Robinson not to receive a job offer. The Court has no reason to believe that the Fifth Circuit would not consider an action that prevented an employee from obtaining subsequent employment an "ultimate employment decision," nor does the Court have reason to believe that the *Robinson* decision has changed the well-settled Fifth Circuit analysis. In fact, *Green v. Administrators of Tulane University Education Fund* was written in 2002, five years after the *Robinson* decision.

conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). The Court finds that the conduct alleged by Plaintiff does not constitute extreme or outrageous conduct as a matter of law. Although unfairly negative evaluations and rude comments may create an unpleasant work environment, they are not enough to cross the line from an ordinary employment dispute to legally outrageous behavior. Therefore, the Court finds that summary judgment is appropriate as to Plaintiff's intentional infliction of emotional distress claim.

## Conclusion

For the reasons set forth above, the Court is of the opinion that Defendant's Motion for Summary Judgment should be GRANTED.

It is so ORDERED.

Signed this 16th day of September, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE